UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
                                                      :
LUZ GONZALEZ,                                         :
                                                      :    **OPINION AND ORDER**
                           Petitioner,                :
                                                      :    00 Civ. 0168 (SAS)
     - against -                                      :
                                                      :
JO ANNE B. BARNHART,                                  :
COMMISSIONER OF SOCIAL                                :
SECURITY,                                             :
                                                      :
                           Respondent.                :
------------------------------------------------------X

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.   INTRODUCTION

Luz Gonzalez appeals from a December 27, 2000 decision denying her request for Social Security disability benefits. Gonzalez's case was initially filed in this Court on January 10, 2000, but was remanded to the Commissioner of Social Security for further consideration on May 23, 2000. The Commissioner issued a final decision again denying benefits on August 23, 2003, and Gonzalez renewed her suit on February 2, 2005. Gonzalez now moves for judgment on the pleadings reversing the Commissioner's decision; the Government opposes her motion and cross-moves for judgment on the pleadings affirming the Commissioner's decision. For the following reasons, Gonzalez's motion is granted

and the Government's motion is denied.

## II. BACKGROUND

### A. Facts

Luz Gonzalez is a fifty-two-year-old woman. She was born on January 2, 1953 in the Dominican Republic, where she attended school through the third grade.[1] Gonzalez does not speak English although she has a limited ability to read and write in English.[2] Gonzalez alleges that she is permanently and totally disabled as a result of a workplace injury sustained on November 21, 1996. At the time of her injury, Gonzalez worked as a shipping clerk; she claims to have injured her back while lifting a heavy box.[3] Following her injury, Gonzalez was seen by a number of medical professionals and received a variety of diagnoses and treatment recommendations.

On December 12, 1996, Gonzalez filed a claim for disability benefits, alleging that she was permanently and totally disabled. She stated that she was under the care of Richard Weinberg, a chiropractor, that she was not taking any medication for her injury, and that she was not interested in rehabilitative services

---

[1] *See* Administrative Record at 37.

[2] *See id.*

[3] *See id.* at 34.

that would enable her to return to work.[4] On January 10, 1997, Weinberg stated that Gonzalez suffered bilateral trapezius and SCM spasms, bilateral erector spinal spasms, L4-S1 disc tenderness, and bilateral gluteal spasms.[5] Weinberg opined that Gonzalez was totally disabled.[6] He noted that the only treatment Gonzalez had received thus far was chiropractic manipulation.[7]

On March 5, 1997, Gonzalez was examined by Dr. Peter Graham, a consultant for the Social Security Administration. Graham observed that Gonzalez walked and stood normally, and that she was able to dress and undress herself and get on and off the exam table without a problem.[8] He also opined that Gonzalez was "able to sit, stand, walk, lift, carry, handle objects, hear, speak, and travel."[9] On March 18, 1997, Gonzalez stated that she was able to care for her own personal needs but that she had to move slowly.[10] On March 27, 1997, Dr. Hughes, a physician with the Social Security Administration, completed a "Physical Residual

---

[4] *See id.* at 62, 74, 77.

[5] *See id.* at 98.

[6] *See id.* at 99.

[7] *See id.* at 98.

[8] *See id.* at 110.

[9] *Id.*

[10] *See id.* at 91.

Functional Capacity Assessment" although he never examined Gonzalez.[11] He opined that Gonzalez was able to lift fifty pounds or more frequently; that she could stand, walk, or sit for about six hours of an eight hour workday; that she had unlimited capacity to push and pull; and that she had no other significant physical limitations.[12] On March 28, 1997, Dr. Danza, another physician with the Social Security Administration, reviewed the file.[13]

At Weinberg's request, Dr. Gondolo, a neurologist, evaluated Gonzalez on June 9, 1997.[14] Dr. Gondolo noted that Gonzalez had "5/5" strength in all four of her extremities.[15] She listed her impressions as: "1 - Cervical sprain and strain; 2 - Rule-out cervical radiculopathy; 3 - Lumbosacral sprain and strain; [and] 4 - Rule-out lumbosacral radiculopathy."[16]

Gonzalez underwent an MRI test on February 21, 1998. Dr. Ronald Staron, the attending radiologist, listed the following impressions: "Evidence of

---

[11]   *Id.* at 81.

[12]   *See id.* at 82-84.

[13]   *See id.* at 42.

[14]   *See id.* at 119.

[15]   *Id.* at 120.

[16]   *Id.*

increased hematopoetic marrow within the cervical spine. Disc osteophyte complex at the C5-6 level results in spinal stenosis. Smaller disc osteophyte complexes at the C3-4 and C4-5 levels result in mild spinal stenosis . . . . Hemangioma in the L4 vertebral body. Mild spinal stenosis at the L4-5 level as described, and the sagittal views demonstrate minimal dessication of L4-5 disc."[17]

On June 12, 1998, Weinberg reiterated his opinion that Gonzalez was totally disabled. He also noted that she was suffering emotional difficulties as a result of her health problems and he referred her for psychological evaluation.[18] If such an evaluation was ever made, it has not been included in the record.

On July 15, 1997, Dr. Ploski, an orthopedic surgeon who examined Gonzalez at Weinberg's request, also recommended that she receive a psychological evaluation.[19] Dr. Ploski performed a physical examination of Gonzalez and formed an impression of "1- Cervical derangement; 2 - Low back derangement; 3 - Headaches and dizziness of unknown etiology; [and] 4 - Multiple joint pains of unknown etiology."[20] Dr. Ploski noted "a strong psychological

---

[17] *Id.* at 122-23.

[18] *See id.* at 111.

[19] *See id.* at 118.

[20] *Id.*

reaction and anxiety regarding her neck and back injury."[21] Dr. Ploski opined that Gonzalez was "totally disabled" as of the examination date but he did not recommend treatment by an orthopedic surgeon.[22]

On November 21, 1998, Gonzalez fell down the stairs of her building and suffered injuries to her right knee and ankle.[23] On December 3, 1998, she was seen by Dr. Klara Sosina, who performed a full exam. Dr. Sosina noted "[c]ervical range of motion produced the following result: Full range of motion in flexion and extension. Rotation to the right and left were full. Range of motion of the lumbosacral spine produced the following result: Full range of motion in the flexion and extension. Lateral bending to the right and left were full . . . . Palpation of the spine muscles resulted in: Normal Cervical paraspinal muscles. Normal cervical interspinous space. Normal lumbosacral paraspinal muscle. Normal lumbosacral interspinous spaces."[24] Dr. Sosina also examined Gonzalez's shoulders and noted that "range of motion was full in flexion, abduction and internal rotation. Acromio-clavicular joint was not tender. There was no pain with

---

[21] *Id.*

[22] *Id.*

[23] *See* Supplemental Administrative Record ("SAR") at 184.

[24] *Id.* at 185.

resisted external rotation. There was no tenderness at the rotator cuff insertion site or in the bicipital groove."[25] Dr. Sosina's exam is the last exam on record that took place before the expiration of Gonzalez's insurance on December 31, 1998.

Subsequent to December 31, 1998, Gonzalez was seen regularly by Dr. Sosina and Dr. Petraco for treatment of her ankle and knee injuries.[26] She was prescribed a course of physical therapy, pain medication, and eventually received arthroscopic surgery on her knee.[27] Dr. Sosina's records from December 1998 until November 1999 show a steady decrease in Gonzalez's pain coupled with an increase in range of motion.[28] Dr. Petraco, a second treating physician, made similar observations.[29] Neither doctor noted any limitations on Gonzalez's physical capabilities aside from slight reductions in her range of motion in her knee.

### B. Procedural History

The Administrative Law Judge (the "ALJ") determined that Gonzalez

---

[25] *Id.*

[26] *See id.* at 175-89.

[27] *See id.* at 176.

[28] *See id.* at 175-86.

[29] *See id.* at 187-90.

was not disabled from November 1996 to December 1998, the time period for which Gonzalez is claiming benefits. In making his decision, the ALJ relied heavily on Dr. Graham's finding that Gonzalez retained significant functional capacities. However, on July 29, 2000, the Appeals Council vacated the ALJ's decision and remanded the case to the ALJ for further proceedings.[30] The Appeals Council noted that Dr. Graham did not possess a valid license to practice medicine during the time that he examined Gonzalez. The Appeals Council therefore held that the ALJ could not rely on any opinion of Dr. Graham as to Gonzalez's capabilities.[31] Following the remand, the ALJ again determined that Gonzalez was not disabled during the relevant time period.[32] On August 26, 2003, the Appeals Council declined to hear the case and the ALJ's opinion became the final determination of the Commissioner.[33] Gonzalez now appeals that decision.

## III. LEGAL STANDARD

The Social Security Act provides that the findings of the Commissioner as to any fact shall be conclusive if supported by substantial

---

[30] *See id.* at 171-73.

[31] *See id.* at 173.

[32] *See id.* at 151.

[33] *See id.* at 129-30.

evidence.[34] "Where the court finds that substantial evidence exists to support the Commissioner's determination, the decision will be upheld, even if contrary evidence exists."[35] Substantial evidence is more than a mere scintilla; it means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[36] The substantial evidence standard applies not only to findings of fact, but also to inferences and conclusions drawn from the facts.[37] Although the district court must accord significant deference to the factual findings and inferences of the Commissioner, the court reviews de novo whether "the correct legal principles were applied and whether the legal conclusions reached by the [ALJ] were based on those principles."[38]

Social Security regulations set forth a five-step procedure that must be

---

[34] *See* 42 U.S.C. § 405(g) (2005).

[35] *Mackey v. Barnhart*, 306 F. Supp. 2d 337, 340 (E.D.N.Y. 2004). *Accord DeChirico v. Callahan*, 134 F.3d 1177, 1182 (2d Cir. 1998) (affirming Commissioner's decision where there was substantial evidence for both plaintiff and defendant).

[36] *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

[37] *See D'Amato v. Apfel*, No. 00 Civ. 3048, 2001 WL 776945, at *3 (S.D.N.Y. July 10, 2001).

[38] *Mackey*, 306 F. Supp. 2d at 340 (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

applied by an ALJ in evaluating a claim of disability.[39]  *First*, the ALJ must determine whether the claimant is engaged in substantial gainful activity.  *Second*, assuming the claimant is not working, the ALJ determines whether the claimant has a "severe impairment" that significantly limits her physical or mental ability to do "basic work activities."  *Third*, if the claimant does suffer a severe impairment, the ALJ determines whether the impairment "meets or equals" one of the impairments listed in Appendix 1 of the regulations.  If the impairment meets or equals a listed impairment, the claimant is presumed to be disabled.  If the impairment does not meet or equal a listed impairment, the ALJ proceeds to step four, which requires the ALJ to determine whether the claimant is able to perform her past relevant work.  *Fifth*, if the claimant is unable to perform her past relevant work, the ALJ determines whether the claimant is capable of performing any other work.  If the claimant is not capable of performing any other work, the claimant is considered disabled.  "A claimant shall be determined to be under a disability only if the claimant's physical or mental impairment or impairments are of such severity that the claimant . . . cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in

---

[39]  *See* 20 C.F.R. § 404.1520 (2005).  *See also Diaz v. Shalala*, 59 F.3d 307, 311 n.2 (2d Cir. 1995).

the national economy, regardless of whether such work exists in the immediate area in which the claimant lives, or whether a specific job vacancy exists for the claimant, or whether the claimant would be hired if the claimant applied for work."[40]

Throughout the five-step process, the ALJ must consider "'(1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's education background, age, and work experience.'"[41] Although the claimant must prove "the requirements in the first four steps, the burden then shifts to the [Commissioner] to prove in the fifth step that the claimant is capable of working."[42] "'In the ordinary case,' the Commissioner meets his burden at the fifth step 'by resorting to the applicable medical vocational guidelines (the "grids"), 20 C.F.R. Pt. 404, Subpt. P, App. 2 (1986).'"[43] The grids take into account the claimant's residual functional capacity, age, education, and work

---

[40] *Mackey*, 306 F. Supp. 2d at 341 (citing 42 U.S.C. § 423(d)(1)(A) (2004)).

[41] *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1037 (2d Cir. 1983)).

[42] *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996).

[43] *Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1998) (quoting *Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986)).

experience.[44] "Based on these considerations, the grids indicate whether the claimant can engage in any substantial gainful work existing in the national economy. Although the grid results are generally dispositive, exclusive reliance on the grids is inappropriate where the guidelines fail to describe the full extent of a claimant's physical limitations."[45]

## IV. DISCUSSION

If there is substantial evidence supporting the ALJ's decision, that decision must be affirmed even if there is also substantial evidence supporting Gonzalez's claim, unless the ALJ did not apply the correct legal standard. There is no doubt here that the ALJ applied the legal standard required by the Social Security regulations. In his December 27, 2000 decision, the ALJ set forth the five-step process described in Section 404.1520 of the Code of Federal Regulations. After stating the law, the ALJ applied the five-step process to Gonzalez's claim and concluded that she is not "disabled."[46]

*First*, the ALJ stated that Gonzalez is not engaged in substantial

---

[44] *See id.*

[45] *Id.*

[46] *See* SAR at 151.

gainful activity.⁴⁷ *Second*, the ALJ held that Gonzalez suffers from a severe physical impairment but, *third*, he held that her impairment does not meet or equal one of the conditions listed in Appendix One of the Social Security Regulations.⁴⁸ Therefore, Gonzalez is not presumed to be disabled; however, under the fourth and fifth steps of the inquiry, she might still have qualified as disabled. *Fourth*, the ALJ concluded that Gonzalez was no longer capable of performing her past relevant work because it required moderate to heavy exertion.⁴⁹ But the ALJ held that Gonzalez remains capable of performing light and sedentary work.⁵⁰ On that basis, the ALJ denied Gonzalez's request for disability benefits. The ALJ referred to Rule 202.16 of the Medical Vocational Guidelines in denying Gonzalez's request for benefits.⁵¹

The determination that Gonzalez was not disabled must be reversed because it is not supported by substantial evidence. The ALJ agreed with

---

⁴⁷ *See id.* at 144.

⁴⁸ *See id.* at 145.

⁴⁹ *See id.* at 149.

⁵⁰ *See id.* at 150.

⁵¹ *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 202.16 (2005) (stating that an unskilled "younger individual" who is illiterate or unable to communicate in English and is capable of light or sedentary work is not considered disabled).

Gonzalez's assertions in the first four steps of the analysis; in other words, he believed that Gonzalez suffered from a severe impairment that prevented her from performing her past relevant work.  At this point, the burden shifted to the Commissioner to prove that Gonzalez remained capable of performing some available work in the national economy.  The ALJ concluded that Gonzalez retained the capacity to perform light work; however, he did not cite substantial evidence in support of his conclusion.  Therefore, the ALJ's decision must be vacated.

    The findings of both Weinberg and Dr. Ploski, as well as Gonzalez's own testimony about her pain and her physical limitations, support Gonzalez's assertion that she was disabled from November 1996 until November 1998.  Moreover, an MRI from February 1998 showed spinal stenosis, among other problems.  Finally, on June 9, 1997, Dr. Gondolo diagnosed Gonzalez with cervical and lumbosacral sprain and strain.  Although Dr. Gondolo noted that Gonzalez had "5/5 strength" in all four extremities, she did not offer an opinion as to Gonzalez's capacity to do work.  The single comment on Gonzalez's strength is the only indication by any examining physician that Gonzalez retained the capacity

to do work between November 1996 and November 1998.[52]

In his opinion of December 27, 2000, the ALJ emphasizes that Gonzalez took only non-prescription medication for her pain and that Gonzalez was prescribed continued chiropractic manipulation rather than a more aggressive course of treatment. However, the Second Circuit has specifically held that the fact that a doctor has prescribed a conservative course of treatment does not constitute substantial evidence that a claimant is not disabled.[53]

The ALJ cited no positive evidence of Gonzalez's ability to perform work. Rather, he indicated that the conservative nature of her treatment suggested that her doctor and chiropractor were incorrect in finding that Gonzalez was totally disabled; however, as already stated, conservative treatment is not substantial evidence that a claimant is not disabled. The ALJ also correctly noted that because Weinberg is a chiropractor, not a physician, his opinion is not entitled to

---

[52] Gonzalez's file was reviewed by Drs. Hughes and Danza, both of whom opined that Gonzalez was not disabled as of March 1997. In his original opinion, the ALJ cited these opinions as support for his finding that Gonzalez was not disabled; however, he did not address the reports of Hughes and Danza in his second opinion. It is unclear whether the ALJ decided that the opinions of these non-examining physicians should not be given significant weight or whether Drs. Hughes and Danza had based their opinions on the now-discredited opinion of Dr. Graham. Regardless, the ALJ's decision to place no weight on the opinions of these non-examining physicians will not be disturbed.

[53] *See Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000).

controlling weight.[54] However, this fact does not relieve the Commissioner of his burden of proving that Gonzalez retained the capacity to perform light work. Merely casting doubt on some of the proof offered by Gonzalez as to her inability to work is not at all the same as proving her ability to work and the Commissioner has offered no affirmative proof of Gonzalez's ability to work in the time between November 1996 and November 1998. Therefore, Gonzalez's claim must be granted for this time period.

By contrast, the Commissioner has offered substantial evidence that Gonzalez's disability did not continue past December 3, 1998. On that date, Gonzalez received a full physical examination from Dr. Klara Sosina. Dr. Sosina performed a musculoskeletal examination and noted that Gonzalez's back and shoulders were normal and pain-free. Dr. Sosina continued seeing Gonzalez regularly from December 1998 until December 1999. At no time did she note a change in Gonzalez's condition with regard to her back and shoulders.

Dr. Sosina did note that Gonzalez had problems with her right knee and ankle resulting from a fall on November 21, 1998. Dr. Sosina diagnosed

---

[54] *See Diaz v. Shalala*, 59 F.3d 307, 314 (2d Cir. 1995) ("under no circumstances can the regulations be read *to require* the ALJ to give controlling weight to a chiropractor's opinion.") (emphasis in original).

Gonzalez with a contusion on the right knee, a right knee sprain and a right ankle sprain. Furthermore, Gonzalez's MRI revealed a torn lateral meniscus in the right knee. However, in order to be found disabled, Gonzalez must show that she was unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."[55] Gonzalez sustained her knee injury on November 21, 1998. Both of the doctors treating her in the spring of 1999 noted steady improvement in her knee and ankle and neither noted any restrictions in her ability to work. Regardless of the severity of Gonzalez's injuries immediately following her fall, there is substantial support for the Commissioner's conclusion that the injuries Gonzalez sustained did not render her disabled for a full twelve months. Therefore, Gonzalez is not entitled to disability benefits from December 3, 1998 onward.

## V. CONCLUSION

Because there is no substantial evidence supporting the Commissioner's determination that Gonzalez was not disabled between November 1996 and December 1998, the Commissioner's denial of disability benefits must be reversed as to this time period. The Commissioner's decision denying benefits

---

[55] 42 U.S.C. § 423(d)(1)(A) (2005).

from December 3, 1998 onward is upheld. The case is remanded to the Commissioner of Social Security solely for a calculation of benefits owed for the time between November 21, 1996 and December 3, 1998. The Clerk of the Court is directed to close these motions (docket # 13, 14) and this case.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:	New York, New York
	August 9, 2005

## - Appearances -

*For Plaintiff:*

Steven Z. Motofsky, Esq.
26 Court Street, Suite 700
Brooklyn, New York 11242
(718) 852-1839


*For Defendant:*

Susan D. Baird
Assistant United States Attorney
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
(212) 637-2713